**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| **EDDIE D. SUTHERLAND** | ) | CASE NO. 11-70993 |
| **BARBARA M. SUTHERLAND** | ) | |
| | ) | |
| Debtors. | ) | |

_____

| | | |
|---|---|---|
| **EDDIE D. SUTHERLAND** | ) | |
| **BARBARA M. SUTHERLAND** | ) | |
| | ) | |
| Movants | ) | |
| | ) | **MOTION FOR VALUATION** |
| v. | ) | **AND OBJECTION TO CONFIRMATION** |
| | ) | |
| **GRAYSON NATIONAL BANK** | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MEMORANDUM DECISION

The matter before the Court is the Debtors' contested Motion for Valuation (the "Valuation Motion") with respect to certain real and personal property securing certain loans made to them by Grayson National Bank (the "Bank") and such bank's complementary Objection to Confirmation of the Debtors' proposed Chapter 13 Plan.  An initial evidentiary hearing was held on October 5, 2011 and a final hearing was held on November 16, 2011 at which times the Debtors appeared with their counsel, Robert T. Copeland, Esq., and the Bank appeared by its  counsel, Mark L. Esposito, Esq.  The precise issue presented is the proper amount of the Bank's secured claim against the Debtors' bankruptcy estate.  At the conclusion of the latter hearing, the Court took the Valuation Motion under advisement.

FINDINGS OF FACT

The Court makes the following findings of fact with respect to the Motion:

1.  The Debtors filed their Chapter 13 bankruptcy petition with this Court on May 5, 2011.  In Schedule A filed with their petition they valued their residence property located at 214 Comers Rock Road, Elk Creek, Virginia at $81,100.  For some reason unknown to the Court they valued what appears to be the same property on Schedule D, which contains their secured creditors, at a value of $84,050.  On October 17, 2011 they filed an amended Schedule D which listed the residence property together with a 1996 Ford Explorer,[1] a 1998 Ford F150 pickup truck, a 2000 Kenworth W900L truck tractor (the "Kenworth") and a John Deere lawnmower as having an aggregate value of $95,200.  All of this property served as collateral for a loan made by the Bank to the Debtors and having a petition date balance according to the amended Schedule D of $231,000.  The personalty serving as collateral for the loan was valued in Schedule B filed with their petition as having an aggregate value of $14,100 apportioned as follows:  Explorer ($1,600), F150 ($2,750), Kenworth ($9,000), and lawnmower ($750).  Although the items of collateral for this loan were separately listed in the original Schedule D, their aggregate value was $95,200 if one uses the $81,100 figure for the real estate listed in Schedule A, but was $98,150 if the Schedule D value for the real estate was utilized.  The Debtors did not file amended Schedules A and B when they filed the amended Schedule D on October 17 or at any other time.

---

[1] The Virginia certificate of title attached to Claim # 7 filed by the Bank indicates that the vehicle is a 1996 Ford Bronco rather than a Ford Explorer.  In this opinion the Court will use the Debtors' designation of this vehicle as an Explorer.

2

2.  The Debtors also owned a 1995 Jeep Wrangler which they valued consistently at $2,950 in Schedule B and both versions of Schedule D.  This vehicle is collateral for another loan from the Bank to the Debtors which had a petition date balance according to both versions of Schedule D of $24,529.17.

3. The Debtors' Chapter 13 plan containing the Valuation Motion presently before the Court is one dated June 16, 2011 (the "Plan") which was filed with the Court on July 8, 2011.[2] In this Plan they propose to value the Bank's collateral as follows:  residence property at $50,000, the Explorer at $1,600, the F150 at $4,400, the Kenworth at $11,322, the Jeep Wrangler at $471.80 and the John Deere lawnmower at $750.  The values for the Explorer and the lawnmower are consistent, but the other values vary, the greatest variance being reflected in the scheduled versus Plan values for the residence property ranging from $50,000 in the Plan to $81,100 in Schedule A ($84,050 in Schedule D), for the Kenworth from $9,000 in Schedule B to $11,322 in the Plan, for the F150 from $2,750 in Schedule B to $4,400 in the Plan, and for the Jeep Wrangler from $2,950 in Schedule B to $471.80 in the Plan.

4.  On August 10, 2011 the Bank filed its Objection to confirmation of the Plan in which it took issue with the proposed "cramdown" values which it contained and asserted that the value of the residence property was $84,050 as set forth in the original Schedule D and that its other collateral was properly valued at $7,362 for the F150, $6,475 for the Jeep Wrangler, $29,750 for the Kenworth, $4,562 for the Explorer, and $6,500 for a John Deere Model 455 diesel tractor with mower deck and plow.  In its Objection the Bank claims to be owed the sum of $29,175.51

---

[2] Confirmation of this Plan was denied by an order of this Court entered on October 6, 2011.

3

upon the loan secured by the Jeep Wrangler and $228,247.11 upon the loan secured by the other collateral.

5. Both parties offered testimony from licensed real estate appraisers for the proper value of the Debtors' residence property, the Debtors offering Mr. Curtis Harrington who opined that such property had a value as of the filing date of $55,500, while the Bank offered Mr. Edward Greer who testified that in his opinion the property had a value as of August 8, 2011 of $76,000. The written appraisal report prepared by Mr. Greer was introduced into evidence[3] and has been reviewed by the Court. The Debtors did not offer any such report prepared by Mr. Harrington. Mr. Sutherland, the male Debtor, testified as to his opinion of the values of the personal property as well as his opinion of the value of the residence property. Mr. Sutherland testified that the Grayson County real estate tax assessment value of the residence property is $51,900 but he believes that it is worth about $60,000. In addition to offering Grayson County real estate tax documentation substantiating a tax assessment value of $50,900 rather than the $51,900 figure testified to by Mr. Sutherland, the Debtors also offered Grayson County personal property tax assessment values of $1,600 for the Explorer, $2,950 for the Jeep Wrangler, and $2,750 for the Ford F150.[4] Mr. Sutherland also testified at the initial hearing that the Kenworth truck was worth $10,000, the Explorer $1,600, the Jeep Wrangler $5,000, the F150 $4,400, and the John Deere tractor and mower $1,000.

6. The Bank has filed two secured proofs of claim in this case, one (claim # 8) for

---

[3] Exhibit B.

[4] The Grayson County tax notices collectively make up Debtors' Exhibit 1. No such value was offered for the Kenworth.

$29,175.51 secured by the Jeep Wrangler with a claimed value of $6,475, and the other (claim #

7) for $228,247.11 secured by the other collateral already detailed above having an asserted

value of $132,224.00.

7. After consideration of the testimony of Mr. Sutherland as to the mileage and general

condition of the vehicles, his opinion as to their values, the Grayson County tax assessed values,

the NADA valuations offered by the Bank and admitted into evidence as Exhibits C, E, F and H,

the Court finds that the replacement values of the Ford Explorer, Ford F150 pickup truck, and

Jeep Wrangler as of the filing date are $2,500, $4,400 (Debtors' value), and $5,000 (Debtors'

value), respectively.

8. After consideration of the testimony of Mr. Sutherland as to the mileage and general

condition of the Kenworth, the significant overhaul work done to such truck in 2010 at an

expense of $8,783.60, the relatively few miles such truck has been driven between the time of

such overhaul and the filing date, the pictures of such truck admitted into evidence as Exhibit #

3, and the absence of any admissible evidence of some demonstrated reliability offered by the

Bank, the Court finds that the Debtors failed to establish by a preponderance of the evidence that

such truck had a value of either $10,000 as testified by Mr. Sutherland at the hearing or $11,322

as provided in the plan.  While the Court believes that the evidence offered by the parties as to

the replacement value of such truck as of the filing date was insufficient for it to be confident of

what that value might be, it recognizes that evidence is often not as persuasive as ideally it ought

to be.  On the basis of the evidence that was offered and the use of its own common sense, the

Court finds that the Kenworth had a replacement value of $17,500 as of the petition date.

9.   When inquiry was made at the October 5 hearing as to the basis for the values asserted in the Debtors' bankruptcy schedules, Mrs. Sutherland testified that she had called the Bank when she was in the process of assembling the necessary information for the schedules and talked with a bank employee who gave her a figure from its records which she had used.  Mr. Curtis Jennings, a vice president of the Bank who testified at that hearing, was not able to provide any information from the Bank's records which would substantiate such account and indicated that he had no knowledge of any such call having been made to the Bank.  The difference between the value for such property contained in Schedule A and that noted in Schedule D was not explained.  At no time during the pendency of this matter have the Debtors filed any amended schedules which purport to change the scheduled value of their residence property as contained in their original schedules.

10.   Upon consideration of the testimony and demeanor of the appraisers as well as that of Mr. and Mrs. Sutherland, the written appraisal report of Mr. Greer admitted into evidence as Exhibit B, the information regarding an auction sale of a number of Bank owned residential properties which took place in September of 2011, several of which involved the sale of doublewide modular homes having some similarity to the Debtors' residence, and the purpose for which the value of such property is to be determined, the Court finds that a value somewhat higher than the opinion offered by Mr. Sutherland but somewhat below the value arrived at by Mr. Greer best approximates the value of the property as of the filing date and sets that value at $70,000.

11.   Evidence offered by the Bank indicated that it had a security interest not only on the Deere Model 455 tractor with mower deck but also on a blade attachment for it as well.  No such

6

blade was noted in the Debtors' schedules or in Mr. Sutherland's testimony and it is unclear whether such omission was an oversight or whether the Debtors do not actually own such an attachment. Accordingly, the Court is without sufficient information to determine the value for this portion of the Bank's collateral. The Court is satisfied, however, that the replacement value of the Deere diesel tractor and mower is at least $2,500.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The Court further concludes that the determination of the value of a secured claim upon property of the bankruptcy estate for the purpose of determining whether a proposed Chapter 13 plan ought to be confirmed is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (L).

The filing of a bankruptcy petition creates an estate "comprised of all of the following property, wherever located and by whomever held: (1) . . . [subject to certain exceptions] all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In short, the bankruptcy estate comes into existence and is determined as of the commencement of the case. Against the bankruptcy estate thereby arising a "creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). If any objection is filed to any such proof of claim, the bankruptcy court, "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition[.]" 11 U.S.C. § 502(b).

7

One of the requirements for confirmation of a Chapter 13 plan is that "with respect to each allowed secured claim provided for by the plan – [unless the holder of the claim otherwise agrees or the debtor surrenders the property] the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]" 11 U.S.C. § 1325(a)(5)(B)(ii). In the case of *In re Allen*, 240 B.R. 231, 236-37 (Bankr. W.D. Va. 1999), this Court ruled that the date for determining the value of the collateral securing a claim for purposes of Chapter 13 plan confirmation is the case filing date. In the case of *In re Brown* decided a few months later, this Court further held that, at least with respect to purchase money security interests, a Chapter 13 debtor seeking confirmation of a plan bears the burden of proving by a preponderance of the evidence that the value of property securing a claim dealt with in such plan is less than the amount of the debt owing to the creditor. *In re Brown*, 244 B.R. 603, 610-11 (Bankr. W.D. Va. 2000). In a very recent decision this Court similarly determined that a Chapter 7 debtor bears the same burden of proof with respect to motions to redeem personal property from a creditor's lien pursuant to 11 U.S.C. § 722. *In re Kell*, No. 11-71388, slip op. at 6 (Bankr. W.D. Va. Nov. 17, 2011).

Section 506 of the Bankruptcy Code dealing generally with the subject of "Determination of secured status" and as applicable to the questions now before this Court provides as follows:

> (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the

8

purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §506(a).

Statements contained in the schedules of a bankruptcy debtor can constitute binding admissions of the factual matters set forth in such schedules. *See Larson v. Groos Bank,* 204 B.R. 500, 502 (W.D. Tex. 1996); *In re Kaskel,* 269 B.R. 709, 715-16 (Bankr. D. Idaho 2001); *In re Bohrer,* 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001); *Matter of Musgrove,* 187 B.R. 808, 812-13 (Bankr. N.D. Ga. 1995); 2 Hon. Barry Russell, *Bankruptcy Evidence Manual* § 801.22, at 873-76 (2010-11 ed.); *In re Kell,* slip op. at 7 (valuation for purpose of § 722 redemption motion).

## DECISION

The difficulty, in times of the nature the country is currently experiencing, of valuing residential real property in a rural area with relatively little population and a rather limited database of recent comparable transactions to consider is rather dramatically demonstrated by a variation in opinion of more than twenty five percent presented by two licensed real estate appraisers working in that area. Both appraisers viewed the property within the same month of August, 2011, approximately three months after the petition date, and after hearing their testimony the Court is satisfied that there is no material difference in the value of the Debtors' residence property between such dates. The admission of the Bank's appraiser's written report

9

into evidence enabled the Court to evaluate the comparable transactions considered by such appraiser in arriving at his opinion of value.  Those transactions all involved sales[5] of doublewide modular homes on acreage within Grayson County, although none of them was very close to the Debtors' property.  While the Court recognizes that transactions such as the Bank's sale of a number of bank-owned properties during the month of September, 2011 do affect the general residential real estate market for the area, it finds itself in agreement with Mr. Greer that such sales ought not to be taken as true comparable sale transactions to ones involving willing buyers and sellers with neither being under a compulsion to sell or purchase.  While the approximate values represented by the real estate tax assessed value, the value proposed in the Debtors' plan, and the value opined by Mr. Harrington are legitimate valuations, the Court considers them to be more representative of the property's liquidation value.  Under the Debtors' plan, however, they are not proposing to liquidate the property but to retain it and pay the Bank its fair value.  The evidence seems to be clear that the Debtors maintain their residence property in a better-than-average condition and that it is a desirable property.  While the Court believes that Mr. Sutherland made a good faith effort to give his best judgment as to this property's value, it cannot ignore that all of us are influenced by our own interests.  Neither does it believe that it should completely disregard the fact that the Debtors, while being represented by very capable and experienced bankruptcy counsel, approved and signed under penalty of perjury as being correct bankruptcy schedules reflecting a value exceeding $80,000 for their residence property.  Even though the Court will not treat such scheduled value under the circumstances presented here as binding upon

---

[5] Unfortunately the report did not provide the dates of the comparable transactions used so its evidentiary weight is somewhat compromised.

the Debtors for the purpose of plan confirmation, it has given it some weight in arriving at the finding of value made in this decision.

The Debtors being of course individuals prosecuting a Chapter 13 case, the valuation standard for personal property secured by a lien set forth in § 506(a)(2) of the Bankruptcy Code is applicable to the matters at issue here.  Replacement value of such property is therefore the rule and that means what it might reasonably be expected to cost someone as of the filing date to purchase the same or similar property in the market place.  The Court believes that the values proposed by Mr. Sutherland for the F150 pickup truck ($4,400) and the Jeep Wrangler ($5,000) represent a fair indication of those vehicles' replacement values as of the petition date. While the value of $1,600 might represent a reasonable liquidation value for the Explorer, the Court has determined that $2,500 is a more accurate indication of such vehicle's replacement value.  The Court further believes that the Kenworth's replacement value, considering its mileage and need of some paint work, but also its excellent mechanical condition as acknowledged by Mr. Sutherland and its rather limited use between the date of the significant repairs made to it in 2010 and the filing date, is significantly higher than Mr. Sutherland's opinion or the value proposed in the Plan.  The Court's determined value of $17,500 is admittedly somewhat lacking in satisfactory evidentiary support, but it represents approximately twice the cost of the 2010 repairs and the Court highly doubts that the Debtors could have replaced it with a comparable truck in May of 2011 for less than such $17,500 figure.  The Court will not repeat here but simply reference the comments it has already made concerning the valuation of the Deere tractor in paragraph # 11 of the Findings of Fact contained in this decision.

An order in accordance with the decision here explained will be entered

contemporaneously with the docketing of this Memorandum Decision.

DECIDED this 13th day of December, 2011.

_William F. Stone, Jr._
_____
UNITED STATES BANKRUPTCY JUDGE